**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Gary Schumacker,                           Civil No. 05-530 (DWF/AJB)

       Plaintiff,

v.                                            **MEMORANDUM**
                                            **OPINION AND ORDER**

Liberty Mutual Insurance Company,

       Defendant.

___

Steven S. Fuller, Esq., Fuller Law Firm, counsel for Plaintiff.

John H. Guthmann, Esq., Hansen, Dordell, Bradt, Odlaug, & Bradt, PLLP, counsel for Defendant.

___

## INTRODUCTION

Gary Schumacker commenced this action against Liberty Mutual Insurance Company ("Liberty"), alleging that Liberty had intentionally obstructed his right to workers' compensation benefits in violation of Minn. Stat. § 176.82 (2004). This matter came before the Court on September 8, 2006, pursuant to Liberty's Motion for Summary Judgment. For the reasons set forth below, the Court denies Liberty's motion.

## BACKGROUND

On August 20, 2001, Schumacker sustained a work-related injury to his lower back when he slipped on water while working for Crenlo, Inc. ("Crenlo"). At that time, Liberty insured Crenlo for workers' compensation liability. As a result of his injury,

Schumacker sought workers' compensation benefits.  During its investigation of Schumacker's injury, Liberty discovered that Schumacker had previously injured his back while working for a previous employer.   For this reason, Liberty filed a Notice of Primary Liability Determination, denying liability for Schumacker's injury.[1]

On June 4, 2003, Schumacker filed a workers' compensation claim petition, seeking workers' compensation benefits for the 2001 accident.  Liberty and Schumacker then commenced discovery, including an independent medical examination by Dr. Richard Hadley that occurred on November 5, 2003.   Dr. Hadley issued his report on November 15, 2003, and, in that report, he concluded that Schumacker injured his back as a result of his work activities on August 20, 2001, and that the 2001 injury was a substantial contributing factor in causing Schumacker's lower-back condition and his need for medical treatment.[2]  Dr. Hadley concluded that the 2001 injury was a permanent aggravation of Schumacker's pre-existing back problems that resulted in a permanent partial disability rating of 20%.  Liberty did not appeal Dr. Hadley's findings.  As of the date of Dr. Hadley's findings, Liberty owed Schumacker approximately $65,0000 for permanent partial disability, temporary total disability, and temporary partial disability; approximately $38,000 for medical expenses; and interest to date.

---

[1]     A review of the correspondence reveals that at least four different attorneys represented Liberty during the relevant events, which resulted in different interpretations of communications and calculations between the parties.

[2]     Schumacker may have also injured his back while working for Crenlo on
(Footnote Continued on Next Page)

On December 5, 2003, Liberty wrote to Schumacker, asking him to engage in settlement discussions and asking for a settlement demand to resolve all claims except future medical expenses. On December 18, 2003, Schumacker responded to Liberty by asking for $150,000 to cover workers' compensation benefits owing to date per Dr. Hadley's report. On January 14, 2004, Schumacker filed an amended claim petition that added a claim for penalties under Minn. Stat. § 176.225 (2004) for Liberty's alleged unreasonable delay in paying Schumacker's benefits. On January 26, 2004, Liberty wrote Schumacker and offered to settle his claims for $60,000, plus payment of all past medical claims and future, reasonable medical claims.

Schumacker responded on February 4, 2004, and stated that he would not counter-demand until Liberty's offer exceeded the value of his claim at the time of Dr. Hadley's report, which was, at a minimum, over $100,000. Schumacker also explained that it was improper for Liberty to try to negotiate a settlement with him using money Liberty already owed him, a theme that Schumacker repeated often in his correspondence with Liberty. In response, Liberty increased its offer to $70,000. Schumacker responded on February 24, 2004, with a demand of $140,000. Liberty responded on March 4, 2004, and increased its offer to $85,000. Schumacker did not respond to the March 4 letter.

Liberty reminded Schumacker of its $85,000 offer in a letter dated April 30, 2004. Schumacker responded on May 11, 2004, asking for $135,000. Liberty increased its

---

(Footnote Continued From Previous Page)
October 15, 2001. This injury became irrelevant after Dr. Hadley issued his report.

offer to $92,500 on May 13, 2004, and Schumacker responded by lowering his offer to $132,500.  On May 25, 2004, Liberty paid Schumacker's claim-to-date as of November 2003, except for interest, partial payment of attorney fees, any penalties owed as a result of Schumacker's § 176.225 claim, and temporary partial disability after October 25, 2003, because Schumacker had not provided Liberty with sufficient documentation.

At that time, Liberty also stated that it would pay Schumacker's on-going temporary partial disability wage loss benefits from and after October 25, 2004, if Schumacker provided documentation of his wage records.  In response, Schumacker sent Liberty a list of Schumacker's earnings from a taxicab company, but he did not provide Liberty with actual pay stubs.  On June 28, 2004, Liberty wrote to Schumacker asking for the pay stubs.  Schumacker responded to the letter by referring to his earlier documentation of wage records.  Eventually, Liberty paid Schumacker's temporary partial disability benefits using Schumacker's wage records.

On July 1, 2004, a workers' compensation judge conducted an administrative hearing on Schumacker's § 176.225 claim.   The judge issued her findings on August 20, 2004.  She found Liberty's failure to pay Schumacker unreasonable and ordered that Liberty pay an additional 30% of all benefits paid to Schumacker through the hearing date.  Liberty did not appeal the judge's order.  On September 14, 2004, Schumacker filed a new claim petition seeking additional penalties based upon Liberty's failure to make timely interest, temporary partial disability, and penalty payments.  On October 13, 2004, Liberty then paid some, but not all, of Schumacker's temporary partial payments and

interest. According to Schumacker, as of November 3, 2004, Liberty owed him approximately $38,000 pursuant to the judge's August 20, 2004 order.

On November 14, 2004, Liberty wrote to Schumacker to resolve any outstanding issues related to the August 20 order. Schumacker responded in a letter dated December 6, 2004, and Liberty wrote to Schumacker on December 14, 2004, asking for an offer to resolve all the issues. In February 2005, Schumacker filed a complaint in Minnesota state court, alleging a violation of § 176.82. Liberty removed the case to this Court in March 2005. The parties exchanged further correspondence, and on May 18, 2005, Liberty paid Schumacker a final payment of all his claims through May 31, 2004. Schumaker admits that this payment constitutes full payment of all workers' compensation benefits owing to him. Shortly thereafter, Schumacker and Liberty entered into a stipulation of settlement, under which Schumacker specifically did not release his § 176.82 claim.

## DISCUSSION

**I.      Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Obstruction of Benefits

Minnesota's workers' compensation system, which replaced a fault-based, litigation-intensive compensation system, is designed to provide the exclusive remedy for an injured worker. *Minter v. Ford Motor Co.*, 827 F. Supp. 1418, 1424 (D. Minn. 1993); Minn. Stat. § 176.031 (2004). In rare instances, however, the system provides for additional remedies when employers and insurers frustrate the intent of the system by delaying the payment of benefits. *Bergeson v. United States Fidelity and Guaranty Co.*, 414 N.W.2d 724, 726-27 (Minn. 1987) (discussing additional remedies are available under §§ 176.225 and 176.82). Section 176.82 provides one such additional remedy when an employer or an insurer intentionally obstructs an employee's receipt of workers'

compensation benefits. That section provides, in relevant part:

> Any person . . . in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

Minn. Stat. § 176.82, subd. 1.

Section 176.82 is separate and independent from any penalties provided under the workers' compensation system and is "intended to cover those situations where the insurer's delay or denial of benefits goes beyond reasonableness, neglect, or obstinance." *Bergeson*, 414 N.W.2d at 727. A violation of § 176.82 occurs when "a person, such as an insurer, obstructs or hinders, whether by deliberate action or inaction, the receipt of benefits due the injured worker and does so in a manner that is outrageous and extreme . . . or egregiously cruel and venal." *Id; Kaluza v. Home Ins. Co.*, 403 N.W.2d 230, 233-34 (Minn. 1987) (defining "intentionally obstructing"). A plaintiff must prove a § 176.82 claim by clear and convincing evidence. *Bergeson*, 414 N.W.2d at 727.

In his Amended Complaint, Schumacker asserts that Liberty violated § 176.82 when it intentionally obstructed his workers' compensation benefits by attempting to negotiate a settlement between November 2003 and May 2004 on amounts Liberty admitted already owing Schumacker. Liberty asserts that it is entitled to summary judgment on this claim because Schumacker cannot establish by clear and convincing

evidence that Liberty intentionally obstructed Schumacker's benefits because Liberty eventually paid those benefits. Relying on *Torres v. Doherty Employment G*roup, 2003 WL 22079507 (Minn. Ct. App. Sept. 9, 2003), and *Markgraf v. Douglas Corp.*, 468 N.W.2d 80 (Minn. Ct. App. 1991), Liberty contends that an insurer's wrongful refusal to pay a claim is insufficient as a matter of law to support a § 176.82 claim.

In response, Schumacker contends that, at a minimum, genuine issues of material fact exist concerning whether Liberty's negotiating attempts and delay in payment were outrageous and extreme. Schumacker notes that the six-month delay in payment caused him to suffer emotional distress and incur numerous finance and penalty charges. He highlights the fact that all of Liberty's offers before the May 2004 payment were less than the amount Liberty owed as of the date of Dr. Hadley's report. He also contends that Liberty's behavior contravenes the workers' compensation system, which is designed to pay injured workers' quickly and efficiently, without the need for a lawyer. According to Schumacker, Liberty's negotiation tactic put him at a severe tactical disadvantage because he was forced to negotiate with Liberty because he needed the money.

In essence, Liberty asserts that there can never be a § 176.82 claim if the benefits are eventually paid. But review of case law shows that an insurer who delays payment while not denying claims can indeed subject itself to § 176.82 penalties under the right circumstances. *See e.g., Jones v. Liberty Mutual Ins.*, 474 N.W.2d 18, 19 (Minn. Ct. App. 1991). Here, there is no dispute that Liberty intentionally postponed payment for at least six months by trying to get Schumacker to significantly reduce the amount both parties

agree was owed to Schumacker. Viewing this evidence in the light most favorable to Schumacker, the Court concludes that there are genuine issues of material fact as to whether Liberty's tactics of seeking a settlement on money already owing to Schumacker is sufficiently "egregiously cruel and venal" as to constitute a violation of § 176.82. *See Bergeson*, 414 N.W.2d at 727.

## CONCLUSION

The Court will hold a telephone conference to discuss the procedural posture of this case, including Schumacker's proposed amendment to the Amended Complaint and a new trial ready date. Given this, the parties are directed to meet and confer to discuss all remaining issues in this matter. Then, within two weeks from the date of this Order, the parties shall submit a joint letter to the Court, outlining (1) any agreements the parties have reached to resolve procedural and substantive issues; (2) outstanding issues that need to be resolved by the Court prior to trial; (3) the parties' respective positions on those outstanding issues; and (4) the exact issues to be tried to the Court and/or jury and who has the burden of proof on those issues. The Court will then schedule a telephone conference to resolve the topics outlined in the parties' letter.

A denial of a summary judgment motion does not equate to a victory at trial or rule out a subsequent Federal Rule of Civil Procedure 50 motion, especially when a plaintiff must prove his claim by clear and convincing evidence. Therefore, the Court strongly believes that it is in the parties' best interests to negotiate a full and final resolution of this lengthy dispute. If the parties wish to schedule a settlement conference with the

magistrate judge, either before or after the Court's telephone conference, they should contact Kathy Thobe, Calendar Clerk for Magistrate Judge Arthur J. Boylan, at 651-848-1210.  If the Court can be of any assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank, at 651-848-1296.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendant Liberty Mutual Insurance Company's Motion for Summary Judgment (Doc. No. 40) is **DENIED**.

Dated:  October 6, 2006             s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    Judge of United States District Court